COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Coleman and Willis
Argued at Alexandria, Virginia


FRANCES DENISE HINNANT

                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0909-95-4    JUDGE SAM W. COLEMAN III
                                         MAY 7, 1996
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                    Paul F. Sheridan, Judge

        John M. Tran (Greenberg, Bracken & Tran, on
        briefs), for appellant.

        Leah A. Darron, Assistant Attorney General
        (James S. Gilmore, III, Attorney General, on
        brief), for appellee.


     Frances Denise Hinnant was convicted in a jury trial of

petit larceny under Code § 18.2-96.  Hinnant contends that the

trial court erred by refusing to instruct the jury that she was

not guilty of larceny if she believed that the stolen property

had been abandoned, by admitting certain evidence, and by finding

the evidence sufficient to prove that the stolen property had

value.  We hold that the trial court did not err and affirm the

defendant's conviction.

                            FACTS

     On July 30, 1994, at approximately 9:50 p.m., Shannon

Welford, a security guard at a department store in the Pentagon

City Mall, saw the defendant in the store and began to watch her.

_____

        [*] Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Welford testified that she focussed her attention on the defendant because the defendant was wearing "revealing" clothing and acting suspiciously. According to Welford, the defendant "was looking around nervously in all directions . . . as if . . . to see if somebody was watching her," and "seemed to be kind of pacing back and forth in a small area and looking towards the wrap desk." Welford observed the defendant remove a blue suit from one display area and hang it up on another display. Then Welford witnessed the defendant make "several tugging motions" at the suit, and "eventually saw something cupped into her right hand."

After the defendant left the store with a male companion, Welford checked the suit the defendant had been handling and noticed that three buttons were missing from it. Welford testified that the suit was not missing the three buttons before the defendant handled it.

Although the defendant passed several cashiers on her way out of the store, she made no attempt to pay for the buttons or ask an employee whether she could have them. Welford stopped the defendant outside the store and asked her to come to the security office, which the defendant did. Welford searched the defendant's purse and found three buttons identical to those missing from the blue suit.

When Welford asked the defendant why she took the buttons, the defendant stated "that she just wanted them and knew it was

wrong to do it."  The defendant also "repeatedly asked if she could just pay for the item and go."

Welford testified that the suit was valued at $190 prior to the removal of the buttons, but that without the buttons, the suit "ha[d] no value to [the store]."  Welford did testify that "it would be possible that [the suit] -- if it was not destroyed, . . . would be sent to a rack store and sold for a very low rate, a very low price."  Welford further testified that although the store does not sell buttons, the buttons were valued at approximately $5.

The defendant testified that she found the buttons on the floor and that she thought they were trash.  She testified that she planned to ask the cashier if she could have the buttons, but forgot to do so after her companion came over and told her that the store was about to close.  Michael Wilson, the defendant's companion, testified that he did not see the defendant take the buttons, but admitted that he was not with her the entire time they were in the store.

On rebuttal, Welford testified that she found several other buttons in the defendant's purse in addition to those missing from the blue suit.  The following morning, Welford investigated further and found a red dress in another department of the store that was missing buttons identical to those found in the defendant's purse.

ABANDONMENT INSTRUCTION

- 3 -

At the conclusion of all the evidence, the defendant requested the trial court to give the jury the following instruction:

> Instruction F -- If you believe the defendant . . . took the buttons she is charged with stealing under a belief that the buttons were abandoned property, then, even though her belief was mistaken, you shall find the defendant not guilty of petit larceny.

The defendant testified that she found the buttons on the floor and that she thought "[t]hey were trash." She contends, therefore, that the trial court erred by refusing Instruction F because she was entitled to defend the charge of larceny by proving that at the time of the taking she possessed an honest belief that the property had been abandoned and, thus, had no intent to steal the property. See Barnes v. Commonwealth, 190 Va. 732, 740, 58 S.E.2d 12, 16 (1950); see also Butts v. Commonwealth, 145 Va. 800, 815, 133 S.E. 764, 768 (1926).

On appeal of the trial court's denial of a defense instruction, we review the evidence in the light most favorable to the defendant. Boone v. Commonwealth, 14 Va. App. 130, 131, 415 S.E.2d 250, 251 (1992). Failure to give the defendant's instruction is reversible error if the instruction is supported by credible evidence that amounts to more than a mere "scintilla." Id. at 132, 415 S.E.2d at 251.

In the Barnes case, the defendants were convicted of stealing four large rolls of cable from a shipyard dump. Barnes, 190 Va. at 735, 58 S.E.2d at 13. At trial, the defendants

- 4 -

testified that they had previously removed cable from the dump "and that the persons in charge of the Shipyard had acquiesced in this practice for some years."  In fact, one of the defendants testified that the shipyard's foreman "had told a group of men, including himself, that they could take anything on the dump as long as they 'did not bother lumber.'"  Id. at 736, 58 S.E.2d at 14.  Consequently, the trial court instructed the jury that it must find the defendants not guilty if it "believe[d] from the evidence that the [shipyard] maintained a dump at or near the premises and that they suffered or permitted the accused and others to reclaim metal and other scrap materials therefrom; and . . . that the accused found the cable in question upon the said dump and removed it as they had been permitted to do on other occasions, under an honest belief that it was abandoned material."  Id. at 740, 58 S.E.2d at 16 (emphasis in original).

The evidence in Barnes that they had been told or allowed to remove the property from the dump in the past was a reason that would have allowed the jury to find that the defendants had reason to believe that the shipyard had abandoned the cable in the dump.  See also State v. Hayes, 67 S.E.2d 9, 16 (W. Va. 1951) (holding that the defense instruction on abandoned property should have been given where "the uncle of one of the defendants had told him a year before the taking that the [property] had been abandoned," and the property was located in a dump and was in a dilapidated condition).  Thus, Barnes indicates that a trial

court must give an instruction on abandoned property when the evidence proves that a reason exists for the accused to have a good faith belief that the property is abandoned.

This principle, commonly referred to as a bona fide claim of right, which simply negates the existence of an intent to steal, is uniformly recognized in other jurisdictions. See Butts, 145 Va. at 813, 133 S.E. at 768; see also Nicholson v. State, 369 So. 2d 304, 307 (Ala. Crim. App. 1979) ("Th[e] intent [to commit larceny] is lacking and the defendant is not guilty of larceny if he has taken the property with the reasonable and actual belief that it was abandoned.") (emphasis added); Szewczyk v. State, 256 A.2d 713, 715 (Md. Ct. Spec. App. 1969) (same); State v. Gage, 136 N.W.2d 662, 665 (Minn. 1965) (same). For instance, in Nicholson v. State, the Court of Criminal Appeals of Alabama held that the trial court erred by refusing to give an instruction on abandoned property because "there was evidence by virtue of the appellant's testimony, other testimony, the dilapidated condition of the property taken and its location which tended to show that the trucks may have been abandoned." 369 So. 2d at 307; see also Jordan v. State, 107 Tex. Crim. 414, 419-20 (Tex. Crim. App. 1927).

Here, the facts do not provide a reasonable basis for the defendant to believe that the buttons were abandoned. A commercial retail establishment does not abandon its merchandise by discarding it or leaving it on the floor. A patron of a

clothing store has no reason or basis to conclude that merchandise or matching buttons from merchandise that are found on the floor where clothing is on display have been abandoned. The location of property is a factor to be considered in determining whether a person might reasonably believe that the property has been abandoned. For instance, if buttons had been found in a trash can, a person might reasonably conclude that property is abandoned. In both Barnes and Butts, prior acquiescence or consent to removing cable from the dump and Butts's entitlement to be paid his wages were reasons for the defendants to believe, in good faith, that they had a right to claim the property. No reasonable person would have believed that the store had abandoned its interest in the blue suit if it had been found on the floor. Similarly, it is not reasonable to conclude that the store had abandoned its interest in the buttons, which were an integral part of the suit. Even accepting the defendant's account that she found the buttons on the floor and did not remove them from the suit, she acknowledged that she did not have a reason to honestly believe they were abandoned when she testified that it "did cross [her] mind at first" to ask someone whether she could take them. She did not believe that she had a right to claim the buttons. Thus, because the defendant did not produce a scintilla of evidence to prove that she had a reason to believe, in good faith, that the buttons had been abandoned, the trial court did not err by refusing

Instruction F.

## VALUE

"At the common law, an article to be the subject of larceny must be of some value. It is sufficient, however, it is said, if it be worth less than the smallest coin known to the law." Evans v. Commonwealth, 226 Va. 292, 297, 308 S.E.2d 126, 129 (1983) (quoting Woverton v. Commonwealth, 75 Va. 909, 913 (1881)). Accordingly, the Commonwealth is not required to prove "that the subject of petit larceny has a specific value." Id.

Because the Commonwealth was not required to prove the specific value of the buttons, we need not address the defendant's claim that Shannon Welford had no basis for assigning a value of $5 to the buttons. The fact that buttons belonging to the store were taken is sufficient evidence to prove that property of "some value" was the subject of petit larceny.

## ADMISSIBILITY

The defendant contends that Welford's testimony that the defendant "was looking around nervously in all directions . . . as if . . . to see if somebody was watching her" violated the rule prohibiting lay witnesses from offering their opinions to the jury.[1] See Ramsey v. Commonwealth, 200 Va. 245, 249, 105

---

[1] Although the defendant did not allege specific grounds at trial for the objection to Welford's testimony, the trial court stated that the testimony is "only admitted because it's [Welford's] state of mind. It's not admitted because [Welford is] right as to what [the defendant's] state of mind was at the time." Therefore, the defendant is not barred by Rule 5A:18 from raising this issue on appeal because the trial court considered the issue and ruled on it. See Weidman v. Babcock, 241 Va. 40,

S.E.2d 155, 158 (1958).  In addition, the defendant argues that the trial court abused its discretion by admitting evidence of a red dress that was missing buttons identical to those found in the defendant's possession because it was evidence of a prior bad act.[2]  See Knick v. Commonwealth, 15 Va. App. 103, 105, 421 S.E.2d 479, 480 (1992).  We hold that the trial court did not err by admitting the testimony and the evidence of the red dress.

> Some statements are not mere opinions but are impressions drawn from collected, observed facts, and are admitted under the "collective facts rule."  Thus, an "opinion" formed by a witness at a given time, may be a "fact" that explains why the witness acted in a particular way.  Making this distinction is a question best left to the discretion of the trial judge.

Lafon v. Commonwealth, 17 Va. App. 411, 420-21, 438 S.E.2d 279, 285 (1993) (citations omitted).

Here, Welford testified that the defendant "was looking around nervously" in the context of explaining why she noticed the defendant.  As the trial judge noted, Welford's testimony was offered to explain what she perceived from her observations of the defendant's "physical acts, . . . eye movements, [and] body movements."  Therefore, the judge did not abuse his discretion by admitting the testimony.

With respect to the admissibility of evidence about the red dress, evidence of a prior or subsequent offense is admissible if

(..continued)
44, 400 S.E.2d 164, 167 (1991).

[2] Although the defendant did not offer reasons for her objection when the dress was admitted into evidence, she had provided grounds for the objection prior to trial in her motion in limine.

it is "closely related in time [to the offense charged] and tend[s] to show a general scheme or guilty knowledge and intent." Sutphin v. Commonwealth, 1 Va. App. 241, 246, 337 S.E.2d 897, 899 (1985) (emphasis in original).  Welford testified that the morning after the defendant was arrested for stealing the buttons from the blue suit, she searched the store for other merchandise that was missing buttons.  Welford found the red dress and determined that it was missing buttons identical to two of the buttons found in the defendant's possession.  Therefore, the trial court did not err by admitting evidence pertaining to the red dress.  Because the red dress was found to be missing buttons identical to those found on the defendant soon after the she was arrested for stealing the buttons from the blue suit, it was reasonable to conclude that the defendant had stolen those buttons.  The evidence tended to establish a common scheme or plan to steal buttons from the store's merchandise.

       For the foregoing reasons, we affirm the defendant's conviction.

                                                   Affirmed.

BENTON, J., dissenting.

Abandoned property cannot be the subject of larceny. See Nicholson v. State, 369 So. 2d 304, 307 (Ala. Crim. App. 1979); Commonwealth v. Meinhart, 98 A.2d 392, 395 (Pa. 1953). Whether items found on the property of another are abandoned is a factual issue that must be decided by a jury when put in issue by the evidence. Morissette v. United States, 342 U.S. 246, 276 (1952). Furthermore, even if the evidence proved the property was not abandoned, a defendant could not be guilty of larceny if the jury found she honestly believed it to be abandoned. Barnes v. Commonwealth, 190 Va. 732, 740, 58 S.E.2d 12, 16 (1950). 3 Wharton's Criminal Law § 377, p. 447 (15th ed. 1995).

Hinnant's testimony, if believed by the jury, would have supported a finding that she had a good faith reasonable belief that the buttons she found on the floor of the retail store, which did not sell buttons, were abandoned. The majority's bald conclusion that a "commercial retail establishment does not abandon its merchandise by discarding it or leaving it on the floor" is not compelled by any rule of law and cannot support the failure to instruct the jury. "[J]uries are not bound by what seems inescapable logic to judges." Morissette, 342 U.S. at 276. Viewed in the light most favorable to Hinnant, Boone v. Commonwealth, 14 Va. App. 130, 131, 415 S.E.2d 250, 251 (1992), the evidence was sufficient to support the giving of the instruction.

- 11 -

For these reasons, I would reverse the conviction and remand for a new trial.