COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Frank
Argued at Chesapeake, Virginia


AUBREY THOMAS
                                   MEMORANDUM OPINION* BY
v.    Record No. 0507-00-1          JUDGE RICHARD S. BRAY
                                         MAY 29, 2001
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    Thomas S. Shadrick, Judge

          Christopher Todd Hedrick (David D.
          Dickerson & Associates, on brief), for
          appellant.

          Amy L. Marshall, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     A jury convicted Aubrey Thomas (defendant) of "intentionally

[causing] . . . injury" "to property" in violation of Code

§ 18.2-137(B), a Class 1 misdemeanor.  On appeal, he contends the

trial court erroneously refused to instruct the jury on the

"lesser offense" of "unlawfully . . . damag[ing] . . . property,"

a Class 3 misdemeanor proscribed by Code § 18.2-137(A).  Finding

no error, we affirm the conviction.

     The parties are fully conversant with the record, and this

memorandum opinion recites only those facts necessary to a

disposition of the appeal.  In accordance with well established

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

principles, we consider the evidence in the light most favorable to the prevailing party below, the Commonwealth in this instance.

                                    I.

Viewed accordingly, the record discloses defendant was confined in an "isolation cell" at the Virginia Beach jail at the time of the subject offense and, like all prisoners in isolation, denied "contact with . . . anybody but deputies."  Each isolation cell was equipped with a surveillance camera that "scan[ned] through" at intervals of "fifteen to twenty seconds," with the images televised to and monitored by jail personnel stationed in "Main Control."  Additionally, a "flap" in the doorway of the cells facilitated a routine "thirty minute [visual] check" of inmates by deputies.

For fire protection, each cell was equipped with a "sprinkler head," located in the ceiling, eight feet from the floor and "eight to twelve inches straight up and over" from the prisoner's "bunk."  Activated either by heat or "impact," the sprinklers would automatically release "approximately 11,000 gallons" of water per minute and trigger an audio/visual "alert" at "Main Control" that indicated the location of an activated sprinkler.

At approximately 5:40 a.m. on August 27, 1999, an "alert" signaled the operation of the sprinkler in cell C-280, then occupied by defendant.  An immediate "camera check" revealed "water rushing, water on the floor and water coming out of the cell," and defendant "standing on his bunk."  Scans of the cell

-

preceding the alarm had disclosed nothing "out of the ordinary." Deputy P.F. Barnes was promptly dispatched to C-280 and, upon arrival, observed "water coming out at the cell," defendant "standing on top of the bed" and water flowing from the "sprinkler head," "bent like it was struck," "broken." The water, which "had [then] been running . . . three or four minutes," had flooded the cell to "about six inches" and "leaked into the hallway," blanketing "everything" with a "black . . . oily substance."

Several hours earlier, Deputy Barnes had conducted a search of C-280, investigating a report that defendant was in possession of "contraband." When "some pencils," prohibited items in "restrictive housing," were discovered and removed from the cell, defendant had protested, "it wasn't right and so forth," and became "very belligerent, yelling and screaming profanities." Barnes recalled the "sprinkler head" was "in perfect order" at that time.

Deputy Donald Stanley, assigned to the maintenance department of the jail, described the damage resulting from the water and related "grime and stuff" and the necessary repairs. Stanley, familiar with the construction and operation of the sprinklers, testified that none had malfunctioned during his tenure at the jail, dating from 1993, and opined, without objection, that the subject "head" had been "opened by impact." Stanley totaled the water damages to the jail at $430.

-

Defendant, previously convicted of eleven felonies, testified he had occupied C-280 for "probably seven months before the" incident and was "laying on the floor" when, suddenly, "water was coming down." He claimed "water was running" "about an hour before" authorities intervened. Although defendant acknowledged "various problems" during his "stay" in the jail, he denied tampering with the sprinkler and offered no explanation for the occurrence.

The trial transcript reflects a "recess" at the conclusion of the evidence to permit the court "to get together with the lawyers . . . and look at . . . jury instructions," followed immediately by the court's inquiry of defendant's counsel, "What [have] you got for instructions?" The transcript then parenthetically notes a "sidebar conference . . . by the court and counsel out of the hearing of the court reporter." The record further reflects a granted instruction, embracing intentional damage to property, together with the attendant penalty, and a refused instruction, offered by defendant, addressing unlawful damage and the lesser penalty. The jury subsequently convicted defendant for "Destruction of Property" and fixed a punishment appropriate to intentional damage. The court subsequently "confirmed" the verdict and imposed the recommended sentence.

Defendant complains on appeal that "the trial court should have accepted [his] jury instruction which would have allowed the jury to consider" a sentence for either intentional or unlawful

-

damage.  In response, the Commonwealth contends defendant failed to present an adequate record to permit appellate review of the instruction issue but, nonetheless, the evidence did not support the instruction on the lesser offense.

## II.

Rule 5A:18 provides, in pertinent part:

> No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice.

The "judgment of the lower court is presumed to be correct and the burden is on the appellant to present us a sufficient record from which we can determine whether the lower court has erred in the respect complained of." Smith v. Commonwealth, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993).  Thus, an appellate court "cannot base its decision upon appellant's petition or brief, or statements of counsel in open court.  We may act only upon facts contained in the record."  Id. (citation omitted).

Here, the record, including the transcript of the proceedings, fails to set forth the argument advanced by defendant in support of the proffered instruction or reasons the trial court refused it.  Thus, we have nothing before us to indicate either the issues presented to the court in compliance with Rule 5A:18 or attendant rulings.  Under such circumstances, we are unable to properly consider the appeal for error.

-

Nevertheless, defendant, at oral argument, relied upon Martin v. Commonwealth, 13 Va. App. 524, 414 S.E.2d 401 (1992), in support of his contention that submission of the instruction on the "lesser offense," without more, sufficiently presented the issue to the trial court. In Martin, an appeal of a conviction for attempted capital murder, we found that, "[b]y tendering [an] assault instruction, Martin fully alerted the trial judge and the Commonwealth that simple assault is a lesser-included offense of attempted capital murder," together with the attendant argument that "sufficient evidence supported granting the instruction." Id. at 530, 414 S.E.2d at 404. However, even if we assume, without deciding, that defendant properly raised the lesser-included offense issue by simply proffering the disputed instruction, his appeal must fail.

"The principles governing our review of a trial court's decision refusing a jury instruction are well-settled. 'If any credible evidence in the record supports a proffered instruction on a lesser included offense, failure to give the instruction is reversible error.' 'Such an instruction, however, must be supported by more than a mere scintilla of evidence.'" Brandau v. Commonwealth, 16 Va. App. 408, 411, 430 S.E.2d 563, 564 (1993) (citations omitted). Thus, "'[a] defendant is entitled to have the jury instructed only on those theories of the case that are supported by the evidence.'" Connell v. Commonwealth, 34 Va. App. 429, 436, 542 S.E.2d 49, 52 (2001) (citation

-

omitted) (emphasis added); see Stewart v. Commonwealth, 10 Va.

App. 563, 570, 394 S.E.2d 509, 513 (1990) (accused not entitled

to lesser-included offense instruction inconsistent with theory

of defense); see also Delacruz v. Commonwealth, 11 Va. App. 335,

338, 398 S.E.2d 103, 105 (1990) (court must instruct on

"defendant's theory of defense," if supported by the evidence).

"Although the Commonwealth prevailed at trial, the appropriate

standard of review requires that we view the evidence with respect

to the refused instruction in the light most favorable to the

defendant."  Boone v. Commonwealth, 14 Va. App. 130, 131, 415

S.E.2d 250, 251 (1992).

Here, the record is bereft of evidence to support an

instruction on the lesser-included offense of unlawful damage to

property.  Uncontradicted credible testimony established that

the sprinkler located in the ceiling of a cell, occupied only by

defendant, was in "perfect working order" until "broken" and

"bent" by "impact."  Defendant, angered by jail personnel only

hours before the incident, was observed standing on his bunk

below the damaged sprinkler, moments after the alarm sounded.

Significantly, defendant testified that he had done nothing to

cause the damage, and was resting on the floor when the device

suddenly and inexplicably activated.  Such evidence clearly

justified an instruction that defendant "intentionally cause[d]

such injury," as contemplated by Code § 18.2-137(B), while

providing no support for an instruction on unlawful damage, a

-

theory of the case inconsistent even with defendant's evidence.

Hence, the court correctly refused the disputed instruction.

Accordingly, we affirm the conviction.

<u>Affirmed.</u>

Benton, J., dissenting.

Aubrey Thomas was arraigned and tried by jury on a warrant charging that he "did unlawfully in violation of [Code] Section 18.2-137 . . . destroy, deface, or damage sprinkler head, mattress, and paint on walls of [the] jail cell . . . with the value of, or damage to, such property being less than $1,000." In pertinent part, the statute provides as follows:

> A.  If any person unlawfully destroys, defaces, damages or removes without the intent to steal any property, real or personal, not his own, . . . he shall be guilty of a Class 3 misdemeanor . . . .
>
> B.  If any person intentionally causes such injury, he shall be guilty of (i) a Class 1 misdemeanor if the value of or damage to the property, . . . is less than $1,000 . . . .

Code § 18.2-137.

At the conclusion of the evidence, the pertinent portions of which are cited in the majority opinion, Thomas' counsel offered a jury instruction that addressed both parts of the statute.  I would hold that the trial judge erred in refusing the instruction.

Among the instructions granted by the trial judge was the following submitted by the Commonwealth:

> The Court instructs the jury that the defendant is charged with the crime of damaging property.  The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:

-

(1)  That the defendant intentionally damaged property which was not his own; and

(2)  That the property damaged was of a value of $1,000.00 or less.

If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the offense as charged, then you shall find the defendant guilty and fix his punishment at:

(1)  Confinement in jail for a specific time but not more than twelve (12) months; or

(2)  A fine of a specific amount, but not more than $2,500.00.

(3)  Confinement in jail for a specific time but not more than twelve (12) months, and a fine of a specific amount but not more than $2,500.00.

If you find that the Commonwealth has failed to prove either or both elements of the offense beyond a reasonable doubt, then you shall find the defendant not guilty.

The following instruction was tendered by Thomas and refused by the trial judge:

You have found the defendant guilty of the misdemeanor of damaging property.  Upon consideration of all the evidence you have heard, you shall fix the defendant's punishment accordingly:

1.  If you find that the defendant unlawfully damaged the property, you shall fix the defendant's punishment at a fine of a specific amount, but not more than $500.00.

2.  If you find that the defendant intentionally damaged the property, you shall fix the defendant's punishment at:

-

> (a)  Confinement in jail for a specific
> time, but not more than twelve (12) months;
> and/or,
>
> (b)  A fine of a specific amount, but not
> more than $2,500.00.

By tendering this instruction which detailed the alternative offenses proscribed by Code § 18.2-137, Thomas' counsel unambiguously alerted the trial judge that he was seeking an instruction that would have informed the jury of the greater and the lesser-included offenses of Code § 18.2-137.

We addressed this circumstance in Martin v. Commonwealth, 13 Va. App. 524, 414 S.E.2d 401 (1992).  There, we ruled as follows:

> The primary function of Rule 5A:18 is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials.  Campbell v. Commonwealth, 12 Va. App. 476, 477, 405 S.E.2d 1, 2 (1991) (en banc).  By tendering the assault instruction, Martin fully alerted the trial judge and the Commonwealth that simple assault is a lesser-included offense of attempted capital murder and sufficient evidence supported granting the instruction.  At this point in the proceedings, the trial judge had an affirmative duty to include the instruction. See Jimenez v. Commonwealth, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991).

13 Va. App. at 530, 414 S.E.2d at 404.  Significantly, in this case, unlike in Martin, the record clearly reflects that Thomas' counsel did object to the trial judge's refusal to give the instruction.  Indeed, the trial judge affirmatively stated that

-

"exception to the Court's ruling was noted by defense counsel."
In other words, Thomas complied more clearly with the
contemporaneous objection rule than did Martin, whose conviction
we reversed.

Although the Commonwealth argues, and the majority holds,
that Thomas is procedurally barred from arguing on appeal that
the trial judge erred in refusing the instruction, the
Commonwealth concedes the obvious fact that Code § 18.2-137(A)
(proscribing unlawful conduct) is a lesser-included offense of
Code § 18.2-137(B) (proscribing intentional conduct). Moreover,
the record clearly establishes that the warrant charged and the
trial judge arraigned Thomas on the charge of "unlawfully"
acting in violation of Code § 18.2-137. Nevertheless, the trial
judge rejected Thomas' instruction, which included the lesser
offense that was specifically charged in the criminal warrant
and recited at the arraignment. On the other hand, the
Commonwealth's instruction, which the trial judge accepted,
informed the jury only of the greater of the two statutory
offenses, which was not specifically referenced in the warrant.
I would hold that Rule 5A:18 has been satisfied and that this
issue is properly before us for decision.

Viewing the evidence pertinent to the refused instruction
in the light most favorable to Thomas, see Blondel v. Hays, 241
Va. 467, 469, 403 S.E.2d 340, 341 (1991), we can only conclude
that no evidence proved how or under what circumstances the

-

sprinkler head was damaged.  The Commonwealth sought to have the jury infer from the evidence that Thomas damaged the sprinkler head intentionally.  That same evidence, or lack of evidence, is reasonably susceptible to the inference that Thomas damaged the sprinkler head unlawfully and not intentionally.  No direct evidence proved Thomas had been striking or otherwise touching the shower head.  Thus, despite the Commonwealth's contentions, the evidence provided a basis for a conviction of the lesser-included offense (unlawful damage) as much as for the greater offense (intentional damage).

As we noted in Martin:

> The Commonwealth argues that because "there is no factual dispute," the trial judge did not err in refusing the instruction.  We disagree with the premise that a factual dispute did not exist.  The disputed factual element in this case was the intent . . . . Although [Thomas'] words and actions were not disputed, his mental state was very much at issue.  "The intent required to be proven in an attempted crime is the specific intent in the person's mind."  The specific intent in the person's mind may, and often must, be inferred from that person's conduct and statements.

> *     *     *     *     *     *     *

> The inferences that flow from the facts do not solely favor the Commonwealth's theory of the case.  It is fundamental that:

> "[t]he jury is not required to accept, in toto, either the theory of the Commonwealth or that of an accused.  They have the right to reject that part of the evidence believed by them to be untrue and to accept that found by them to be true.  In so doing, they

-

> have broad discretion in applying the law to the facts and in fixing the degree of guilt, if any, of a person charged with a crime."
>
> Consequently, "[i]f a proffered instruction finds any support in credible evidence, its refusal is reversible error."

13 Va. App. at 527-28, 414 S.E.2d at 402-03 (citations omitted).

The instruction Thomas tendered would have given the jury an opportunity to apply the law to the evidence proved at trial. No evidence proved how or under what circumstances the water sprinkler was damaged. The cameras did not show whether Thomas was hitting the sprinkler or hanging clothes on it or using it for an exercise bar. The jury was required to infer from the damage to the sprinkler and Thomas' sole presence in the room the means by which the damage occurred. Clearly, the inference of unlawful conduct is as likely and as reasonable from this evidence as is the inference of intentional conduct. "If any credible evidence in the record supports a proffered instruction on a lesser included offense, failure to give the instruction is reversible error." Boone v. Commonwealth, 14 Va. App. 130, 132, 415 S.E.2d 250, 251 (1992). The refusal of Thomas' instruction was plain error.

The instruction Thomas tendered would have informed the jury of both statutory offenses and the alternative punishments available. Although Thomas' rejected instruction is premised upon the jury's finding that Thomas was guilty of damaging property, it was obviously intended to accompany the general

-

instructions concerning the elements of the offense.  While the instruction may have required a revision to fit within the context of the other instructions, it otherwise properly stated the law.  The Supreme Court has consistently ruled, "that when the principle of law is materially vital to a defendant in a criminal case, it is reversible error for the trial [judge] to refuse a defective instruction instead of correcting it and giving it in the proper form."  Whaley v. Commonwealth, 214 Va. 353, 355-56, 200 S.E.2d 556, 558 (1973).  Accord Jimenez, 241 Va. at 250-51, 402 S.E.2d at 681; Nelson v. Commonwealth, 143 Va. 579, 589-91, 130 S.E. 389, 392 (1925).  The revision of the instruction was a minor matter that could have been accomplished by counsel and the trial judge.  Thus, I would hold that "it was not sufficient for the [judge] simply to have refused the instruction instead of correcting it and giving it in the proper form."  Id.

For these reasons, I would reverse the conviction and remand for a new trial.